Gregg S. Garfinkel (State Bar No. 156632)
Amy W. Lewis (State Bar No. 158999)
STONE | ROSENBLATT | CHA, PLC
21550 Oxnard Street, Main Plaza – Suite 200
Woodland Hills, California 91367
Tel:  (818) 999-2232
Fax:  (818) 999-2269
Email: ggarfinkel@src.law.com/alewis@srclaw.com

Attorneys for Defendants
VIP TRANSPORT, INC. and
MAYFLOWER TRANSIT, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT - SAN JOSE BRANCH**

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, a corporation,<br><br>Plaintiff,<br><br>v.<br><br>VIP TRANSPORT, INC., a corporation; MAYFLOWER TRANSIT, LLC, a foreign corporation; and DOE ONE through DOE TEN,<br><br>Defendants. | Case No.: C08-01857 JW (PVT)<br><br>Complaint filed: 3/18/08<br>Removed: 4/7/08<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT UNDER RULE 12(b)(6) OF FEDERAL RULES OF CIVIL PROCEDURE; DECLARATION OF MINDY SANHAMEL IN SUPPORT THEREOF**<br><br>[49 U.S.C. §§14706 and 13907(a)]<br><br>DATE:  June 9, 2008<br>TIME:  9:00 a.m.<br>CTRM:  8 |

TO PLAINTIFF AND ITS COUNSEL OF RECORD AND TO THE CLERK OF THE ABOVE-ENTITLED COURT:

**PLEASE TAKE NOTICE** that on June 9, 2008, at 9:00 a.m., in Courtroom 8, of the United States District Court, Northern District, located at 280 South 1st Street in San Jose, California, defendants, VIP TRANSPORT, INC. and MAYFLOWER TRANSIT, LLC (hereinafter collectively referred to as "Defendants") will move and do hereby move to dismiss, under F.R.C.P. 12(b)(6), the entirety of Plaintiff

1

Sompo Japan Insurance Company of America's ("Plaintiff") Complaint ("Complaint"), given Plaintiff's failure to state a claim upon which relief can be granted.

The motion is made on the grounds that the cause of action plead in the Complaint is completely preempted by the Carmack Amendment to the Interstate Commerce Act (49 U.S.C. §14706).

The motion will be based upon this Notice, the Memorandum of Points and Authorities and Declaration of Mindy Sanhamel in support thereof, attached hereto and served and filed herewith, the Court's file on this matter, and the pleadings and papers filed herein.

DATED: April 8, 2008

STONE | ROSENBLATT | CHA
**A Professional Law Corporation**

By: *Amy W. Lewis*
GREGG S. GARFINKEL
AMY W. LEWIS
Attorneys for Defendants
VIP TRANSPORT, INC. and
MAYFLOWER TRANSIT, LLC

Gregg S. Garfinkel (State Bar No. 156632)
Amy W. Lewis (State Bar No. 158999)
STONE | ROSENBLATT | CHA, PLC
21550 Oxnard Street, Main Plaza – Suite 200
Woodland Hills, California 91367
Tel:  (818) 999-2232
Fax:  (818) 999-2269
Email: ggarfinkel@src.law.com/alewis@srclaw.com

Attorneys for Defendants
**VIP TRANSPORT, INC. and
MAYFLOWER TRANSIT, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT - SAN JOSE BRANCH

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, a corporation,<br><br>Plaintiff,<br><br>v.<br><br>VIP TRANSPORT, INC., a corporation; MAYFLOWER TRANSIT, LLC, a foreign corporation; and DOE ONE through DOE TEN,<br><br>Defendants. | Case No.: C08-01857 JW (PVT)<br><br>Complaint filed: 3/18/08<br>Removed: 4/7/08<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER RULE 12(b)(6) OF FEDERAL RULES OF CIVIL PROCEDURE AND DECLARATION OF MINDY SANHAMEL IN SUPPORT THEREOF**<br><br>[49 U.S.C. §§14706 and 13907(a)]<br><br>DATE: June 9, 2008<br>TIME: 9:00 a.m.<br>CTRM.: 8 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

Plaintiff's Complaint does not, and cannot, circumvent the well settled law that the Carmack Amendment to the Interstate Commerce Act (49 U.S.C. §14706) ***completely preempts*** Plaintiff's state law claim for property damage ***and limits*** Plaintiff's recovery to its actual property loss, if any, subject to any and all

1

contractual, common law and/or tariff-based defenses which Defendants may have. Even here, where the Complaint fails to allege that the damage to the subject property was incident to interstate transportation services agreed upon in the interstate bill of lading, and the allegations are hopelessly vague regarding the relationship of the parties, the Carmack Amendment still applies to preempt all state law claims, including Plaintiff's property damage claim.

It is undisputed, based on the Bill of Lading (attached hereto as Exhibit "B" to the Declaration of Mindy Sanhamel) that governs the shipment of the electron microscope which is the subject of Plaintiff's Complaint, that Plaintiff seeks to recover for conduct arising incident to Defendants' performance of an interstate bill of lading. Thus, Plaintiff's action is ***completely preempted*** by the Carmack Amendment and should be dismissed with prejudice. Simply, Plaintiff's insured, Hitachi High Technologies of America ("Hitachi") intended to engage, and did engage, Defendants to perform interstate transportation services of the subject electron microscope from California to Alabama as set forth in the Bill of Lading.

Plaintiff's attempt to avoid the preemptive ambit of the Carmack Amendment is fatally flawed and should not be countenanced by this court. Defendants respectfully request this court to dismiss Plaintiff's Complaint with prejudice.

### 2. SUMMARY OF COMPLAINT

Plaintiff alleges that on or about July 17, 2006, Defendants damaged an electron microscope owned by its insured, Hitachi, at the warehouse of National Electronic Transport, Inc. ("NET") in Milpitas, California. (Complaint, ¶4). Plaintiff's Complaint is hopelessly vague and ambiguous as to the relationship between Defendants and Hitachi and/or NET other than the allegation that Defendants were negligent in "picking up, handling and dropping the microscope." (Complaint, ¶4). There are no allegations that Defendants had no authority or permission to handle the subject microscope thus raising the question of why Defendants were handling the subject microscope at all? Clearly, the Bill of Lading

provides the answer in that Defendants were engaged to transport the subject microscope from California to Alabama, and the alleged damage occurred incident to the transportation. (Bill of Lading, Exhibit "B" to Declaration of Mindy Sanhamel)

Plaintiff further alleges that the subject microscope was damaged prior to the interstate transportation of same. (Complaint, ¶7). Plaintiff demands a sum of at least $248,148.00 from Defendants. (Complaint, Prayer for Relief).

### 3. THE BILL OF LADING IS CENTRAL TO PLAINTIFF'S CLAIM AND SHOULD BE CONSIDERED BY THIS COURT.

Notwithstanding the fact that Plaintiff's allegations suggest a relationship between Defendants and Hitachi and/or NET, Plaintiff has not referenced or attached any written agreement to its Complaint. However, in that the subject of Plaintiff's Complaint is the interstate transportation of cargo, the Bill of Lading between Plaintiff's insured, Hitachi, and Defendants for the shipment is an integral part of Plaintiff's claim against Defendants. Inasmuch as the Bill of Lading between Hitachi and Defendants establishes that damage to the microscope alleged in Plaintiff's Complaint was incident to the interstate transport of same, Defendants respectfully request this court to consider the Bill of Lading attached as Exhibit "B" to the Declaration of Mindy Sanhamel hereto, in ruling on this Motion to Dismiss in accordance with federal law. *See, Knieval v. ESPN,* 393 F.3d 1068, 1076-77 (9th Cir. 2005).

### 4. THE CARMACK AMENDMENT IS PART OF A COMPREHENSIVE SCHEME DESIGNED TO BRING UNIFORM TREATMENT TO *EVERY FACET* OF THE CARRIER-SHIPPER RELATIONSHIP, INCLUDING FAILURE TO CARRY OUT DELIVERY.

Congress enacted the Carmack Amendment to the Interstate Commerce Act ("ICA") in 1906, in response to the chaotic disparity which resulted from the application of varying state laws to interstate shipping. The Carmack Amendment

defined the parameters of carrier liability for loss and damage to goods transported under interstate bills of lading, bringing uniform treatment to the carrier-shipper relationship. The Amendment, now set forth at 49 U.S.C. § 14706, states in relevant part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier . . . [is] liable to the person entitled to recover under the receipt or bill of lading. ***The liability imposed under this paragraph is for the actual loss or injury to the property*** . . . (Emphasis added.)

Within a few years of the Carmack Amendment's passage, the United States Supreme Court addressed its dual goals of uniformity and preemptive scope. In the seminal case of *Adams Express Co. v. Croninger*, 226 U.S. 491 (1913), the Supreme Court defined Carmack preemption in the broadest terms:

> Almost every detail of the subject [interstate common carriers] is covered so completely that there can be no rational doubt but that congress intended to take possession of the subject, and supersede all state regulations with reference to it. . . . *Id.* At 505-06.

Three years later, the Supreme Court reaffirmed *Adams Express* in *Goergia, Florida and Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S. 190 (1916). *Blish Milling* held that the Carmack Amendment is "comprehensive enough to embrace responsibility **for all losses** resulting from **any failure** to discharge a carrier's duty as to **any part** of the agreed transportation. . . ." (Emphasis added.) *Id.* at 196.

Each succeeding Supreme Court decision interpreting the scope of Carmack had repeated the principles enunciated in *Adams Express* and *Blish Milling*, the comprehensiveness of application and uniformity of treatment regardless of state

4

laws. *See, e.g. Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) *quoting, Louisville & Nashville Ry. Co. v. Rice*, 247 U.S. 201, 203 (1918) ("As to interstate shipments, . . . the parties are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation."); *New York, N.H. & H.R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953); *Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597 (1915) (holding that preemption applies not only to state law claims which directly contradict the procedures or remedies set out in Carmack, but also encompasses state causes of action which supplement Carmack relief); *Atchison T. & S.F. Ry. v. Harold*, 241 U.S. 371, 378 (1916).

All Circuit Courts of Appeal, including the Ninth Circuit, have held that Carmack's broad scope ***completely preempts all state law claims***, whether they contradict or supplement Carmack remedies. *Hughes Aircraft v. North American Van Lines,* 970 F.2d 609, 613 (9th Cir. 1992) ("Hughes, [the shipper] wisely concede[d] that federal law preempts any state common law action against . . . a common carrier."); *Cleveland v. Beltman North American Van Lines Co. Inc.*, 30 F.3d at 379 (2d Cir. 1994) (Carmack preempted federal common law claim for punitive damages based upon bad faith claims handling); *Shao v. Link Cargo (Taiwan) Limited*, 986 F.2d 700, 706-07 (4th Cir. 1993) ("[I]f the Interstate Commerce Commission had jurisdiction over the shipment in this case, Shao's common law claims are preempted by the Carmack Amendment"); *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 383 (5th Cir. 1998) (Carmack preempted plaintiff's claims for compensatory, emotional and punitive damages based on the carrier's alleged "egregious conduct in the course of discharging its duties under the shipping contract"); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306-07 (5th Cir. 1993) (Carmack Amendment preempted claims of misrepresentations, fraud, gross negligence, intentional infliction of emotional distress and violation of Texas Deceptive Trade Practices Act); *W.D. Lawson & Company v. Penn. Central*

*Company*, 456 F.2d 419, 421 (6th Cir. 1972) ("As to the . . . issue . . . [of] whether or not the Carmack Amendment preempted common law suits . . . we hold that it did"); *Hughes v. United Van Lines*, 829 F.2d 1407, 1415 (7th Cir. 1987) ("[We] hold that the remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act. . . ."); *Underwriters at Lloyds of London v. North American Van Lines*, 890 F.2d 1112, 1120 (10th Cir. 1989) ("[T]he Carmack Amendment preempts state common law remedies against a carrier for negligent damage to goods shipped under a proper bill of lading."); *Smith v. United Parcel Service*, 296 F.3d 1244, 1246-49 (11th Cir. 2002) (Carmack preempted plaintiffs' claim for damages due to the carrier's alleged failure to provide service to the plaintiffs).

In fact, the Honorable Judge Real of the Central District of California, addressed similar issues raised in Plaintiff's Complaint and found that state causes of action are expressly preempted. *Coughlin v. United Van Lines*, 362 F.Supp.2d 1166 (C.D. Cal. 2005).

Further, in *Hall v. North American Van Lines, Inc.*, 476 F/3d 683 (9th Cir. 2007), the Ninth Circuit Court of Appeals recently expanded the Court's prior holding in *Hughes v. North American Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992), and noted:

> "Our holding in *Hughes* applies to Hall's common law fraud and conversion claims, even though Hall's claims arise from events other than loss or damage to her property. It is well settled that the Carmack Amendment constitutes a complete defense to common law claims alleging all manner of harms. *See Southeastern Express Co v. Pastime Amusement Co.*, 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936) (delay); *Blish Milling*, 241 U.S. at 197, 37 S.Ct. 541 (mistaken delivery); *Adams Express*,

226 U.S. at 505-06, 33 S.Ct. 148 (loss). It applies equally to fraud and conversion claims arising from a carrier's misrepresentations as to the conditions of delivery or failure to carry out delivery." (citations omitted) *Id.* at 689-90.

Thus, the *Hall* Court found that a shipper's claims that the household goods carrier engaged in conduct tantamount to extortion did not escape the preemptive ambit of Carmack. Further, the *Hall* Court explained that Plaintiff cannot circumvent preemption by alleging "finer distinctions" between types of contracts and damages. *Id.* at 688.

It is against this vast and pervasive backdrop that Plaintiff's property damage claim must be viewed. Stated succinctly, Plaintiff's claim cannot escape the preemptive ambit of Carmack.

## 5. THE STATE LAW CLAIM ASSERTED BY PLAINTIFF IN THE COMPLAINT IS PREEMPTED BY THE CARMACK AMENDMENT.

The complaint in *Hall* alleged that the carrier breached the contract by refusing to deliver such goods until the shipper made additional payment. Furthermore, *Hall* alleged fraud and conversion. Notwithstanding the fact that *Hall* did not allege loss or damage to her property, the Ninth Circuit found that her claims were completely preempted by the Carmack Amendment. *Id.* at 686. The Ninth Circuit applied the "artful pleading" doctrine in holding that a "well-pleaded state law claim presents a federal question when a federal statute has completely preempted that particular area of law." *Id.* at 687.

**Hall is dispositive.** Even here, like in *Hall*, where the Complaint fails to allege a federal claim on its face, the Ninth Circuit found that there are "a handful of 'extraordinary' situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes" *quoting Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993). As such, the state law

claim for property damage asserted by Plaintiff against Defendants is preempted by the Carmack Amendment and must be dismissed with prejudice.

The need for uniformity and certainty are the exact reason why state law claims for damages are precluded by the Carmack Amendment. *Cleveland v. Beltman North American Van Lines Co., Inc., supra,* 30 F.3d at 373; *See also, Pietro Culotta Grapes v. Southern Pacific Transport,* 917 F.Supp. 713 (E.D. Cal. 1996). As it is undisputed that Plaintiff seeks to recover for conduct arising incident to Defendants' performance of an interstate Bill of Lading, it is clear that Plaintiff's action is **completely preempted** by the Carmack Amendment and should be dismissed with prejudice. Critically, Plaintiff cannot circumvent the preemptive ambit of the Carmack Amendment by simply alleging property damage and omitting to allege that the cargo was damaged during the interstate transportation of same.

## 6. CONCLUSION

This Court should respectfully dismiss, with prejudice, Plaintiff's entire action, under Rule 12(b)(6) of the Federal Rules of Civil Procedure and under the Carmack Amendment.

DATED: April 8, 2008

STONE | ROSENBLATT | CHA
**A Professional Law Corporation**

By: _/s/ Amy W. Lewis_
GREGG S. GARFINKEL
AMY W. LEWIS
Attorneys for Defendants
VIP TRANSPORT, INC. and
MAYFLOWER TRANSIT, LLC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# DECLARTION OF MINDY SANHAMEL IN SUPPORT OF
# NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

I, Mindy Sanhamel, declare and state as follows:

1. I am the Office Manager for VIP Transport, Inc. ("VIP"), and I have held this position for 5 years. At all times relevant, I was responsible for, among other things, understanding all paperwork used by VIP to contract for the shipping of cargo and investigating the claim which is the subject of Plaintiff's complaint. As such, I have personal knowledge of the following matters and, if called as a witness, I could and would testify to their accuracy.

2. This Declaration is being offered in support of Defendants' Notice for Removal of Action to Federal Court.

3. In or about July 2006, Hitachi High Technologies America, Inc. ("Hitachi") contracted with Handle with Care Transportation who in turn contracted with VIP who is an authorized agent for Mayflower Transit, LLC ("Mayflower") to ship 2 containers allegedly containing an electron microscope and accessories from Hitachi's warehouse facility at National Electronic Transport ("NET") to the University of Alabama in Tuscaloosa, Alabama. A true and correct copy of the bill of lading governing this shipment is attached hereto as Exhibit "B".

4. It is my understanding that while the shipment was being loaded by Mayflower's driver for transport, the damage alleged in Plaintiff's complaint occurred.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3rd day of April, 2008, in Corona, California.

Mindy Sanhamel, Declarant

STONE | ROSENBLATT | CHA
A PROFESSIONAL LAW CORPORATION
21550 OXNARD STREET, MAIN PLAZA - SUITE 200
WOODLAND HILLS, CALIFORNIA 91367

5

NOTICE FOR REMOVAL OF ACTION TO FEDERAL COURT

**EXHIBIT B**

Apr 02 08 11:32a   viptransportinc   9512737762   p.2

UNIFORM BILL OF LADING
FREIGHT BILL-NOT NEGOTIABLE

IN ANY CORRESPONDENCE
ORDER NUMBER
112105335 : 6

**CONSIGNOR:** Origin Address
HHTA c/o NET
660 VISTA WAY
MILPITAS, CA. 95035

CONTACT: JANESSA OR MARK   PH 408-719-9911

**CONSIGNEE:** Destination Address
UNIV. OF ALABAMA
319 HACKBERRY LN.
BIOLOGY DEPT (BLDG)
TUSCALOOSA, AL

CONTACT: DR. HARRIET SMITH   PH 205-348-183?

SIGNED AT ORIGIN CARRIER AGENT/DRIVER: Reginald Ryn   DATE 7/17/6   I.D. 10314

| DRIVER I.D. | VAN NO. | P/U DATE | FROM | TO | AGENT WHSE. | SET-OFF/SIT | AUTHORIZED BY |
|---|---|---|---|---|---|---|---|
| 10314 | 312 | | ORIGIN | DEST | ATTEMPTED | P/U 7/17/6 | |

**ADDITIONAL SPECIAL INSTRUCTIONS/EQUIPMENT TO LOAD**
MODEL # 7650 HITACHI, S/N 0111-04

Attempt

ORIGIN
X Mark Medewis
CONSIGNOR'S PRINTED NAME

X [signature]
CONSIGNOR'S SIGNATURE

DESTINATION
X
CONSIGNEE'S PRINTED NAME

X
CONSIGNEE'S SIGNATURE ON DELIVERY

PAGE 2/4 * RCVD AT 4/2/2008 11:36:18 AM [Pacific Daylight Time] * SVR:SRCSRV04/1 * DNIS:2269 * CSID:9512737762 * DURATION (mm-ss):03-17

PAGE 3/4 * RCVD AT 4/3/2008 2:12:32 PM [Pacific Daylight Time] * SVR:SRCSRV04/1 * DNIS:2269 * CSID:9512737762 * DURATION (mm-ss):03-12

## CONTRACT TERMS AND CONDITIONS OF CARRIER'S BILL OF LADING

The following Contract Terms and Conditions apply to all services performed by Carrier in addition to all other rules, regulations, rates, and charges in the Carrier's current rate schedule or tariff which are referenced on the front of this Bill of Lading. A copy of the applicable rate schedule or tariff shall be made available to the consignor, consignee and/or shipper upon request.

The word "Shipper" includes the party entering into this Bill of Lading as Consignor and any party for whose account the goods are shipped. The word "Goods" includes articles of every kind and description tendered for transportation under this Bill of Lading or other shipping document properly executed and agreed to by the parties hereto.

Carrier maintains tariffs and/or rate schedules, which set forth the terms, conditions and prices for the transportation services it provides. The applicable tariff and/or rate schedule provisions as well as all inventories prepared in conjunction with this Bill of Lading are incorporated herein by reference. These documents, together with this Bill of Lading, constitute the contractual documents governing the services rendered to Shipper. Incorporated provisions include, but are not limited to: (1) Establishing the limitation of Carrier's liability; (2) Setting the time period for filing claims; and (3) Reserving the Carrier's right to access additional charges for additional services performed. SHIPPER AGREES TO ALL TERMS, CONDITIONS, LIMITATIONS, RATES AND PROVISIONS WHICH ARE CONTAINED IN THE REFERENCED TARIFF AND/OR RATE SCHEDULE.

SECTION 1: The Carrier, its employees, officers, directors, contractors, agents, representatives, and/or corporately related business entities, shall not be liable for physical loss of or damage to any goods handled, stored, or transported pursuant to this Bill of Lading or for delay in the delivery of such goods caused by or resulting:

(a) From an act, omission or order of shipper;

(b) From defect or inherent vice of the article, including susceptibility to damage because of atmospheric conditions such as temperature and humidity or changes therein;

(c) From (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending, or expected attack (A) by any government or sovereign power, or by any authority maintaining or using military, naval, or air forces; or (B) by military, naval or air forces; or (C) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by any governmental authority in hindering, combating, or defending against such an occurrence; (4) seizure or destruction under quarantine or customs regulations; (5) confiscation by order of any government or public authority; (6) risks of contraband or illegal transportation or trade; (7) strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorder; (8) terrorist activity, including action in hindering or defending against an actual or expected terrorist activity. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. The term "terrorist activity" includes any activity which is unlawful under the laws of the United States or any State and which involves any of the following: (1) the hijacking or sabotage of any conveyance (including an aircraft, vessel, cab, truck, van, trailer, container or vehicle) or warehouse or other building; (2) the seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained; (3) an assassination; (4) the use of any (A) biological agent, chemical agent, or a nuclear weapon or device, or (B) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property; or (5) a threat, attempt, or conspiracy to do any of the foregoing.

(d) From acts of God.

(e) From damage due to improper shipper packing, bracing or preparation.

SECTION 2: CARRIER (AND ITS EMPLOYEES, OFFICERS, DIRECTORS, CONTRACTORS, AGENTS, REPRESENTATIVES AND CORPORATELY RELATED BUSINESS ENTITIES) SHALL NOT BE LIABLE IN ANY EVENT FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO LOSS OF PROFITS, INCOME, INTEREST, UTILITY OR LOSS OF MARKET, WHETHER OR NOT CARRIER HAD KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED.

SECTION 3: The liability of Carrier (and its employees, officers, directors, contractors, agents, representatives and corporately related business entities) for physical loss of or damage to any goods handled, stored or transportation pursuant to this Bill of Lading or delay in the delivery of such goods shall be subject to the limitations of liability set forth in this Bill of Lading, the limitations of liability contained in any written, signed account contract and the rules, regulations, rates, charges and provisions of the Carrier's currently applicable tariffs and/or rate schedules referenced on the front of this Bill of Lading.

SECTION 4: Carrier shall not be liable for delay caused by highway obstruction, or faulty or impassable highways, or lack of capacity of any highway, bridge or ferry, or caused by breakdown or mechanical defect of vehicles or equipment or from any cause other than negligence of the Carrier; nor shall the Carrier be bound to transport by any particular schedule, means, vehicle or otherwise than with reasonable dispatch. Carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and the point of destination.

SECTION 5: (a) The Shipper, upon tender of the shipment to Carrier, and the consignee, upon acceptance of delivery of shipment, shall be liable jointly and severally, for all unpaid charges payable on account of a shipment in accordance with the applicable tariffs or rate schedules including, but not limited to, sums advanced or disbursed by Carrier on account of such shipment. The extension of such credit to either Shipper or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges. (b) The Shipper shall indemnify Carrier against loss or damage caused by inclusion in a shipment of explosives, dangerous articles or goods or hazardous materials.

SECTION 6: If for any reason other than the fault of Carrier, delivery cannot be made at address shown on the face hereof, or at any changed address of which Carrier has been notified, Carrier, at its own option, may cause articles contained in shipment to be stored in a warehouse selected by it at the point of delivery or at other available points, at the cost of the Shipper or consignee and subject to a lien for all charges under the applicable accrued rate schedules or tariffs and other lawful charges.

SECTION 7: If shipment is refused by consignee at destination, or if Shipper, consignee or owner of property fails to receive or claim it within fifteen (15) days after written notice by United States mail addressed to Shipper and consignee at post office addresses shown on the face hereof, or if Shipper fails or refuses to pay lawfully applicable charges in accordance with Carrier's applicable tariff or rate schedules, Carrier may sell the property at its option, either (a) upon notice as provided that, thirty (30) days notice of such sale shall have been given in writing to Shipper and consignee at their last known address, and there shall have been published at least once a week for two consecutive weeks in a newspaper of general circulation at or near the place of sale, a notice thereof containing a description of the property as described in the Bill of Lading, and the names of the consignor and consignee. The proceeds on any sale shall be applied toward payment of lawful charges applicable to shipment and toward expenses of notice, advertising and sale and of storing, caring for and maintaining property prior to sale and the balance, if any, shall be paid to owner of property; PROVIDED that any goods contained in said shipment may be sold at public or private sale without such notices, if in the opinion of Carrier such action is necessary to prevent deterioration or further deterioration.

SECTION 8: Nothing in this Bill of Lading shall limit the right of the Carrier to require the prepayment or guarantee of the charges at the time of shipment or prior to delivery. If the description of articles or other information on this bill of lading is found to be incorrect or incomplete, the freight charges must be paid based upon the articles actually shipped.

SECTION 9: As a condition precedent to recovery, a claim to any loss, damage or injury (excluding delay), must be filed in writing with Carrier within nine (9) months after delivery to consignee as shown on Bill of Lading, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed and any civil action must be instituted against Carrier within two years and one (1) day from the date when notice in writing is given by Carrier to the claimant that Carrier has disallowed the claim or any part of parts thereof specified in the notice, otherwise the claim is barred. A claim for delay must be filed in writing with the Carrier within ninety (90) days after delivery to consignee as shown on the Bill of Lading and any civil action for delay must be instituted against the Carrier within one (1) year and one (1) day from the date when notice in writing is given by Carrier to the claimant that Carrier has disallowed the claim or any part or parts thereof specified in the notice, otherwise the claim is barred. Any civil action instituted by a claimant may only be maintained in the United States District Court for the Eastern District of Missouri or in the Circuit Court of St. Louis County, State of Missouri.

PAGE 2/2 * RCVD AT 4/3/2008 9:34:55 AM [Pacific Daylight Time] * SVR:SRCSRV04/1 * DNIS:2269 * CSID:9512737762 * DURATION (mm-ss):02-10

PAGE 4/4 * RCVD AT 4/3/2008 2:12:32 PM [Pacific Daylight Time] * SVR:SRCSRV04/1 * DNIS:2269 * CSID:9512737762 * DURATION (mm-ss):03-12

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES
*Sompo Japan Insurance Company of America v. VIP Transport, Inc., et al*

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 21550 Oxnard Street, Main Plaza, Suite 200, Woodland Hills, California.

On ___8___, Apr-08, I served the foregoing document described as:

- Notice of Motion and Motion to Dismiss Complaint

on all interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

[x]   (BY MAIL) I am familiar with the ordinary business practice of the law firm of Stone, Rosenblatt & Cha for collection and processing of correspondence for mailing with the United States Postal Service at the aforementioned place of business and that the above-entitled document was placed in a sealed envelope and deposited for collection and mailing on the date stated above, following such ordinary practices, and in such manner as to cause it to be deposited with the United States Postal Service that same day, with postage thereon fully prepaid, in the ordinary course of business, addressed as indicated above.

[ ]   (BY E-MAIL) I caused such document to be e-mailed to the addressee.

[ ]   (BY FACSIMILE TRANSMISSION) I caused such document to be faxed to the addressee.

[ ]   (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

[ ]   (BY EXPRESS MAIL, CCP 1013(c,d) I caused such envelope with postage thereon fully prepaid to be placed in the box regularly maintained by the express service carrier, Federal Express, at 21550 Oxnard Street, Suite 200, Woodland Hills, California, copies of the routing slips attached hereto.

[X]   Executed on ___8___, Apr-08 at Woodland Hills, California.

[X]   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[x]   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

/Judith Nourse

**SERVICE LIST**

Michael J. Cummins, Esq.
Joshua A. Southwick, Esq.
GIBSON ROBB & LINDH LLP
100 First Street, 27th Floor
San Francisco, CA 94105
Tel.   (415) 348-6000
Fax    (415) 348-6001